**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**
**Case No. 1:26-cv-01227-RMR-KAS**
**STEPHEN HAYES,**
**Plaintiff,**
**V.**
 **ELIZABETH H. KELLEY, et al.,**
**Defendants.**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MAGISTRATE
ELIZABETH H. KELLEY'S MOTION TO DISMISS [DOC. #21]**

**CONCISE STATEMENT OF UNDISPUTED FACTS**

On February 13, 2026, Defendant Freedom Mortgage Corporation initiated a state property

foreclosure action under Colorado Rule of Civil Procedure 120 (Case No. 2026CV30163), over

which Defendant Magistrate Kelley presided.

The initiating state C.R.C.P. 120 motion contained a fatal, incurable **8-Day Temporal**

**Verification Void (Doc. #31, Exhibit O)**. Outside counsel signed and certified the mandatory

verification statement on January 6, 2026, explicitly relying upon an out-of-state corporate client

notary page that did not physically exist in reality until January 14, 2026. Under *United Bank of*

*Boulder v. Buchanan*, strict compliance with verification mandates is a mandatory jurisdictional

prerequisite. Because the instrument failed at creation, it was born completely **void ab initio**;

state subject-matter jurisdiction never attached on Day One.

1

Prior to the execution of the final order, Plaintiff officially filed a threshold constitutional standing challenge at the state court counter, contesting the bank's status as the real party in interest.

As documented by the certified state court hearing transcript **(Doc. #31, Exhibit R)**, Defendant Magistrate Kelley proceeded to execute an Order Authorizing Sale on April 7, 2026, despite her judicial authority over the file having automatically and completely terminated under the strict mandate of Colorado Rules for Magistrates 5(f).

**LEGAL ARGUMENT**

**I. SOVEREIGN IMMUNITY IS COMPLETELY INAPPLICABLE TO INDIVIDUAL-CAPACITY CIVIL RIGHTS TORTS UNDER SECTION 1983**

Defendant's invocation of the Eleventh Amendment and Sovereign Immunity **(Doc. #21, pp. 4–7)** is a procedural nullity designed to mislead this Court. Plaintiff's Complaint explicitly sues Defendant Elizabeth H. Kelley strictly in her individual capacity for personal constitutional deprivations executed under color of state law.

Long-standing Supreme Court precedent firmly establishes that the Eleventh Amendment provides zero shield to state officials sued in their individual capacities for damages under *42 U.S.C. § 1983 (Hafer v. Melo, 502 U.S. 21, 27 (1991))*. Because Plaintiff is seeking personal accountability and damages against a private tortfeasor rather than an enforcement action against the state treasury, this **Court retains unyielding subject-matter jurisdiction**.

2

**II. THE INDEFEASIBLE RIGHT OF A LITIGANT TO FRAME AN OFFENSIVE**

**JURISDICTIONAL CHALLENGE UNDER THE RULE 12(b)(1) FACTUAL TRACK**

Defendant's assertion of Eleventh Amendment sovereign immunity and absolute judicial

immunity under F.R.C.P. 12(b)(1) **(Doc #21, pp 3,7)** represents a fundamental misunderstanding

of the federal practice guidelines. Plaintiff has not filed an unauthorized, standalone motion to

dismiss out of turn. Rather, Plaintiff has properly integrated a Factual Attack into his responsive

pleadings to challenge the factual assertions upon which the Defendants' sovereign and judicial

immunity claims depend.

It is a core tenet of federal jurisprudence that subject-matter jurisdiction is not a passive defense

belonging exclusively to state actors; it is an unyielding, top-down constitutional gatekeeper that

can be raised by any party, or by this Court, at any stage of the litigation *(Arbaugh v. Y&H Corp.,*

*546 U.S. 500, 506 (2006)).*

When a plaintiff introduces uncontradicted electronic record data demonstrating a threshold

jurisdictional failure, such as the C.R.M. 5(f) automatic power-strip, the plaintiff is fully

authorized to command the court's standard of review. Under the binding Tenth Circuit authority

of *Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)*, the framing of a Factual Attack

strips the moving party of narrative control, suspends the facial presumptions of Rule 12(b)(6),

and legally requires this Court to audit the underlying physical exhibits. **Plaintiff mounts a**

**formal factual attack on the jurisdiction of this Court.** Because Plaintiff mounts a formal

factual attack, the moving Defendants carry the absolute, non-shifting burden to prove that

competent subject-matter jurisdiction exists, and this Court cannot presume the truthfulness of

Defendants' jurisdictional allegations under *Richmond, Fredericksburg & Potomac R.R. Co. v.*

3

*United States, 945 F.2d 765, 768 (10th Cir. 1991).* **Defendants possess absolutely zero authority to strip a citizen of this procedural gateway when defending their family home against an unconstitutional property deprivation.**

**III. THE ABSOLUTE JURISDICTIONAL POWER-STRIP: DEFENDANT ACTED IN THE CLEAR ABSENCE OF ALL JURISDICTION UNDER C.R.M. 5(f)**

Defendant demands absolute judicial immunity under *Stump v. Sparkman* **(Doc. #21, pp. 8–10)**. However, under *Stump*, a judicial officer completely forfeits absolute immunity the exact microsecond they execute an enforcement act in the "clear absence of all jurisdiction."

While Colorado Rule for Magistrates 6(c)(1)(C) provides general parameters for magistrates to hear Rule 120 matters, that authority is strictly limited by the mandatory text of Colorado Rules for Magistrates 5(f). Rule 5(f) dictates that the moment a respondent files a threshold constitutional standing challenge, the magistrate's legal power over the file automatically and completely terminates.

As documented by the certified hearing transcript **(Doc. #31, Exhibit R)**, Plaintiff raised a clear standing challenge at the counter. Defendant Magistrate Kelley possessed a non-discretionary statutory duty to halt proceedings and transfer the file to a District Judge. By overstepping her boundaries and signing property liquidation orders after her power was legally stripped, she acted in the **absolute clear absence of all jurisdiction.** She is legally stripped of all immunity shields and stands before this Court as a standard private litigant.

4

## IV. EXTENSION OF THE JURISDICTIONAL VOID: RELEVANCE OF THE FRACTURED TITLE CHAIN TO THE CRM 5(f) POWER-STRIP

Beyond any subsequent administrative execution delays or real-time database tracking races, the undisputed public land registries of Boulder County expose an incurable structural split that completely destroys the moving party's claims to threshold **Article III standing**. A forensic audit of the public record documents a chaotic, backward corporate transaction pipeline that broke the chain of title at birth.

Following the recordation of the original Deed of Trust on March 1, 2018 (**Exhibit EE) Reception No. 03643056**, the moving debt servicer's high-volume document mills executed a catastrophic, simultaneous electronic processing crash on April 12, 2021, at precisely 10:17 AM. Via **Doc. #1, Attachment #1 Exhibit D, Reception No. 03875850**, Defendant Freedom Mortgage Corporation executed a sworn corporate conveyance purporting to assign, transfer, and set over all interest and liens within the Deed of Trust to the Federal National Mortgage Association ("Fannie Mae"). Concurrently, via **Doc. #1, Attachment #1 Exhibit D, Reception No. 03875851**, the automated registry processed an assignment from Loan Simple Inc. to Freedom Mortgage Corporation.

This simultaneous batch upload created an incurable, fatal legal dead-end under the landmark, controlling authority of the United States Supreme Court in *Carpenter v. Longan, 83 U.S. 271, 274 (1872).* Carpenter dictates that a deed of trust is a mere incident of the underlying promissory note:

5

"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

On April 12, 2021, Freedom Mortgage assigned a completely non-existent **"ghost interest"** to Fannie Mae, as Freedom Mortgage did not legally possess or control the underlying security instrument at the moment of execution. This backward transfer operated as a structural nullity that permanently severed the security instrument from the debt.

The systemic nature of this fraud is conclusively proven by **Doc. #1, Attachment #1 Exhibit D, Reception No. 04007724**, recorded on May 18, 2023, at 7:59 AM. Titled a "Corrective Corporate Assignment," this document constitutes a formal, written admission of record by the Defendants that their 2021 title chain was **broken and legally dead**.

However, under the absolute, top-down authority of the United States Supreme Court in *Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 353 (1920)*, an instrument born a legal nullity due to a threshold structural defect is **void ab initio** and cannot be amended, cured, or given retroactive life by subsequent administrative filings.

"It is a foundational, unyielding principle of federal jurisprudence that where a tribunal acts in the absolute absence of subject-matter jurisdiction, its parameters are nullities. A void order is a legal non-entity that cannot be amended, cured, or given retroactive life by subsequent entries."

6

Because the moving debt servicer relied on an altered, circular loop of self-canceling documents to pretend it possessed standing, it could never establish a concrete, particularized injury-in-fact at the state court counter without committing outright perjury before the tribunal. A summary administrative foreclosure proceeding cannot acquire subject-matter jurisdiction over a dead security instrument; therefore, the state track lacked a live case or controversy from inception, rendering the subsequent execution orders absolute nullities and completely overriding any claims to absolute judicial or official immunity.

## V. THE INHERENT ABSENCE OF AN ARTICLE III INJURY-IN-FACT AT INCEPTION: THE PERPETUAL STANDING FICTION

Beyond any subsequent administrative document execution glitches or chronological timing gaps, Plaintiff's initial March 24, 2026 Complaint strikes directly at the absolute foundation of federal and state judicial power: the irreducible constitutional minimum requirements of standing under *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).*

Under the supreme authority of *Lujan*, the specific party initializing any enforcement action carries the absolute, non-delegable burden to demonstrate an actual, concrete, and particularized injury-in-fact personal to its own corporate entity. Strip away all secondary procedural arguments, the record reveals an unassailable, structural truth: a third-party mortgage debt servicer, by its very nature, never suffers a personal, concrete, real-world injury. They operate strictly as an administrative, third-party billing conduit.

Because the moving debt servicer **could never articulate an independent injury-in-fact** without committing outright perjury before the tribunal, their assertion of threshold standing was

an absolute institutional fiction from the very get-go. **A summary administrative foreclosure proceeding cannot acquire subject-matter jurisdiction over a fiction, and there was never a live case or controversy to adjudicate.** Because Plaintiff's Federal Civil Rights Complaint challenged this foundational standing defect on March 24th, weeks prior to any state hearing or public trustee sale, this Court acquired exclusive jurisdiction over the live constitutional injury, and subsequent auction maneuvers are **legally powerless to render this case moot** under *Mayotte v. U.S. Bank, 880 F.3d 1169, 1174 (10th Cir. 2018).*

## VI. PLAINTIFF SUFFICIENTLY STATES A CLAIM FOR FOURTEENTH AMENDMENT DUE PROCESS VIOLATIONS ARISING FROM A STRUCTURAL JUDICIAL CONFLICT AND A "TRIAL BY AMBUSH"

**A. The Due Process Failures of a Coordinated "Trial by Ambush"**

Defendant claims on **(Doc #21, Page 12)** that Plaintiff's due process rights were fully protected by the scheduling of an April 7th hearing. This narrative is completely contradicted by the unchangeable electronic timestamps in **Document #31, Exhibit Q**. On April 6, 2026, less than 24 hours prior to the April 7th 2026 Rule 120 summary hearing, the bank's lawyers abruptly dumped their unverified documentation layout on Plaintiff. Facilitated entirely under the unlawful color of authority extended by Defendant Magistrate Kelley in the absolute absence of all subject-matter jurisdiction, this **"Trial by Ambush"** was calculated to withhold critical evidence, deny Plaintiff his mandatory statutory time to review, cross-examine, object, and subvert basic Fourteenth Amendment Due Process protections. Forcing an expedited property

liquidation under a void, unverified motion satisfies the heightened particularity pleading metrics of **Federal Rule of Civil Procedure 9(b), requiring the complete denial of Defendant's Rule 12(b)(6) motion.**

**B. The Deep Structural Conflict and Deprivation of Property Post-Summons**

The record demonstrates that Defendant Kelley's actions did not constitute an erroneous exercise of standard judicial discretion; rather, they represent a calculated, extra-jurisdictional overstep executed in the complete absence of all legal authority. Under the absolute mandate of Colorado Rules for Magistrates 5(f), Defendant Kelley was instantly stripped of all color of law the exact millisecond Plaintiff raised a threshold constitutional standing challenge under oath on the record **(Doc. #31, Exhibit R)**. By intentionally ignoring this mandatory statutory termination of her power and rushing to sign the Order Authorizing Sale **(Doc. #31, Exhibit H)** that same afternoon, Defendant Kelley abandoned her judicial character and acted completely outside of lawful jurisdiction.

The gravity of this structural deprivation is compounded by the fact that Defendant Kelley executed both the original order **(Exhibit H)** and the subsequent Amended Order Authorizing Sale **(Doc. #31, Exhibit S)** after she was formally named and served as a primary Defendant in this active Federal Civil Rights Complaint. **The Fourteenth Amendment strictly guarantees every citizen an absolute right to an impartial, disinterested tribunal**. A judicial officer cannot constitutionally preside over an administrative framework or execute substantive property liquidation orders while simultaneously defending her own personal jurisdiction, lack of impartiality, and liability as an active adverse party in pending federal litigation involving that

9

exact individual. This deep structural conflict of interest infuses the state framework with a fatal

element of structural bias. Because Defendant Kelley continued to execute execution orders

while maintaining an active personal conflict of interest, her actions were taken completely

outside the scope of a lawful judicial office, rendering **(Exhibit H)** and (**Exhibit S)** structural

nullities that are entirely unprotected by absolute judicial immunity.

## VII. INDIVIDUAL-CAPACITY DECLARATORY REMEDIES ARE COGNIZABLE AS A THRESHOLD STEPPING STONE FOR DAMAGES

Defendant's reliance on Brown v. Montoya **(Doc. #21, p. 10)** to claim that declaratory relief

cannot be sought in an individual-capacity suit represents an incomplete statement of law. While

prospective structural injunctions against a state entity belong on the official-capacity track, the

Tenth Circuit firmly recognizes that a plaintiff may seek a retrospective declaration of

unconstitutionality against an individual officer when that declaration serves as the foundational

predicate to establish liability for personal compensatory and punitive damages (*Snyder v.

Harris, 738 F. App'x 606, 608 (10th Cir. 2018))*. Because the declaration is sought strictly to

confirm the lawlessness of Defendant's personal conduct, it is fully cognizable under Section

1983.

## VIII. THE TOTAL INAPPLICABILITY OF THE ROOKER-FELDMAN BAR AND ABSTENTION DOCTRINES: CLAIMS ARE NOT "INEXTRICABLY INTERTWINED" WITH A NON-FINAL STATE PROCEEDING

10

Defendant's counsel, Assistant Attorney General Jeremy Johnston, asserts on behalf of Defendant Magistrate Elizabeth H. Kelley, that Plaintiff's federal constitutional claims are completely barred under the Rooker-Feldman doctrine because they are "inextricably intertwined" with a state court foreclosure proceeding, and further argues that this Court must abstain under the Younger doctrine. This argument represents a **severe misapplication** of controlling federal law and a fundamental misunderstanding of individual-capacity liabilities under *Title 42 United States Code Section 1983.* The United States Court of Appeals for the Tenth Circuit has explicitly, firmly foreclosed this exact defense in the landmark ruling of *Mayotte v. U.S. Bank National Association, 880 F.3d 1169, 1174 (10th Cir. 2018).*

**Under Mayotte**, a summary property foreclosure proceeding under Colorado Rule 120 is executed entirely without prejudice and does not constitute a final state court judgment on the merits. Because the state summary order carries zero preclusive effect under C.R.C.P. 120(d)(4), **this Court retains unyielding, independent subject-matter jurisdiction to independently review threshold constitutional violations, civil rights deprivations, and statutory liabilities tied to the track.**

Furthermore, the chronological record completely strips Defendant of these defenses. Plaintiff officially initialized his Federal Civil Rights Complaint on March 24, 2026, weeks prior to the state summary hearing or any public trustee auction block opening. Under settled Tenth Circuit law, a federal claim cannot be "inextricably intertwined" with a state execution order that did not even exist when this Court's jurisdiction locked into place.

The state's reliance on the Younger abstention doctrine is equally defective. Younger abstention is strictly inapplicable where the state court proceeding is non-judicial, summary, and incapable

11

of providing an adequate forum to adjudicate complex federal constitutional claims. Moreover, Younger provides zero protection where the state proceeding was conducted in bad faith or characterized by a total lack of threshold statutory power.

Because Plaintiff is seeking compensatory and punitive damages against an individual administrative officer who acted in the absolute clear absence of all jurisdiction under C.R.M. 5(f) by signing execution entries after her legal authority had automatically and completely terminated on the record, Rooker-Feldman and Younger are completely inapplicable. This Court possesses a non-discretionary, unflagging Article III duty to hear the case, hold the individual actor accountable, and deny the Motion to Dismiss.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests this Court enter an order **denying** Defendant Magistrate Kelley's Motion to Dismiss (Doc. #21), advance this action directly into formal discovery, and award the following final remedies against Defendant in her individual capacity:

- **Declaratory Judgment:** Enter a formal declaration that Defendant's execution of the April 7, 2026 Order Authorizing Sale was performed in the absolute clear absence of all jurisdiction, violating Plaintiff's Fourteenth Amendment Due Process rights, and rendering said state order **void ab initio**.

- **Compensatory Damages**: Award Plaintiff general and compensatory damages in an amount to be proven at trial for the severe emotional distress, clouding of land records, and constitutional injuries inflicted by Defendant's extra-jurisdictional conduct.

12

- **Punitive Damages:** Award Plaintiff punitive damages for Defendant's willful, wanton, and

reckless disregard of mandatory statutory restrictions under C.R.M. 5(f).

- **Statutory Relief:** Grant any such other and further relief as this Court deems just, proper,

and necessary to restore Plaintiff's quiet title and permanent possession.

Dated: May 26, 2026
Respectfully submitted,

Stephen Hayes, Plaintiff Pro Se
205 Ken Pratt Boulevard
Suite 120 #1018
Longmont, CO 80501
Email: ridgeandriverco@gmail.com
heliosexpressenterprize@gmail.com

**PLAINTIFF'S CONSOLIDATED INDEX OF EXHIBITS**

Pursuant to Local Civil Rule 7.1 and Honorable Judge Rodriguez's Civil Practice Standards,
Plaintiff respectfully indexes the following evidentiary exhibits and standalone factual reports
incorporated by reference into his responsive pleadings:

**I. MASTER EVIDENTIARY EXHIBITS**

**(LOCATED IN DOC # 1 - Attachment #1)**
The following exhibits (A+D) were uploaded by the Court Clerk alongside Complaint filed on
March 24th, 2026 as one document)

- **EXHIBIT A**: RULE 120 "JDF-621" Verified Response stating a Constitutional
  Challenge & Defendant Magistrate Kelley's reply to response (setting a hearing) -
  violation of C.R.M.(5)(f)
- **EXHIBIT D**: Assignments of the Security Instruments

13

**(LOCATED IN RECORD: DOC. #31)**

The following exhibits (E thru S) were physically uploaded on April 27, 2026, and remain securely preserved on the court docket as sub-documents of **Document #31**:

- **EXHIBIT E - Attachment #1**: Certified True Copy of the Formal Notice of Lis Pendens, recorded on April 27, 2026, under Reception No. 04129536 in the public records of Boulder County @ 3:22 PM
- **EXHIBIT F - Attachment #2**: Verified Digital Snapshot of the Active Boulder County Pre-Sale Foreclosure Tracking List on April 27th @ 12:03:28 PM
- **EXHIBIT G - Attachment #3**: Verified Digital Ledger Snapshot detailing the 71-Second Electronic Server Race and database tracking shift from "Pre-Sale" to "Continuance List" @ 12:04:39 PM on April 27th, 2026.
- **EXHIBIT H - Attachment #4**: State Court Order Authorizing Sale issued by Magistrate Kelley in the Rule 120 summary hearing on April 7th, 2026
- **EXHIBIT K - Attachment #5**: Official Ledger Recording Receipt issued by the Boulder County Clerk and Recorder's Office, dated April 27, 2026 @ 11:12 AM for Lis Pendens recording.
- **EXHIBIT L - Attachment #6**: EMAIL from Steven Bellanti re Intent to Reschedule Sale
- **EXHIBIT M - Attachment #7**: Circulated UNSIGNED State Court Amended Order Authorizing Sale emailed to plaintiff by Defendant Steven Bellanti
- **EXHIBIT N - Attachment #8**: Physical Copy of the Envelope and Pitney Bowes Postage Tracking Stamp issued by Defendants' Firm, dated April 6, 2026- Mailing Exhibits to be used for April 7th hearing less than 24 hours before- "Trial by Ambush"
- **EXHIBIT O - Attachment #9**: True and Unedited Electronic Signature Logs and Notary Timestamps of the C.R.C.P. 120 Initiating Motion that is Void ab intio- Temporal Void
- **EXHIBIT P - Attachment #10**: Sworn Declaration of Plaintiff Stephen Hayes.
- **EXHIBIT Q - Attachment #11**: Certified United States Postal Service (USPS) Delivery Tracking History and Retrieval Record, dated April 8, 2026
- **EXHIBIT R - Attachment #12**: Certified Official Hearing Transcript of the State Foreclosure Special Statutory Proceeding, dated April 7th, 2026 where Constitutional questions/challenges were raised on record stripping Defendant Magistrate Kelley of Jurisdiction under rule C.R.M (5)(f)
- **EXHIBIT S - Attachment #13**: Signed April 30th, 2026 Amended Order Authorizing Sale signed by Defendant Magistrate Kelley

14

## II. STANDALONE FACTUAL REPORTS (LOCATED IN RECORD: NEW FILINGS)-

The following separate text documents are being uploaded for the first time on May 26, 2026, as attached exhibits to Plaintiff's Response to the Moving Defendants:

- **EXHIBIT P2**: Sworn Declaration of Plaintiff Stephen Hayes (Part II / Supplemental).
- **EXHIBIT T**: Verified Digital Snapshot of the Public Trustee Continuance List Portal displaying an active hold status through May 14, 2026.
- **EXHIBIT U**: Standalone Chronological Table of Undisputed Administrative and Procedural Facts.
- **EXHIBIT V**: Forensic Title Chain Audit Report The Carpenter v. Longan Assignment Split Analysis.
- **EXHIBIT W**: Forensic Verification and Signature Log Analysis (The 8-Day Temporal Void split-oath evaluation.
- **EXHIBIT X**: Articles of Jurisdictional and Constitutional Standing Fiction Analysis (The Lujan Third-Party Servicer Mechanics.)
- **EXHIBIT Y**: Forensic Analysis of the Mandatory Jurisdictional Power-Strip Under Colorado Rules for Magistrates 5(f).
- **EXHIBIT Z**: Forensic Analysis of the Fair Debt Collection Practices Act and Cognizable Statutory Liabilities Under 15 U.S.C. § 1692f(6).
- **EXHIBIT AA**: Forensic Analysis of Individual Capacity Liability and the Knowing Enforcement of a Jurisdictional Void by Administrative Officers.
- **EXHIBIT BB**: Forensic Analysis of Administrative Immunity Forfeiture and Callous Indifference to Constitutional Rights.
- **EXHIBIT CC**: Physical Copy of the Private CERTIFICATE OF PURCHASE executed/issued to H2 Properties on May 13th, 2026
- **EXHIBIT DD**: Copy of the Note given to Boulder County Clerk and Recorders office and used as an Exhibit in the April 7th, 2026 Rule 120 Hearing
- **EXHIBIT EE:** Deed of Trust

## CERTIFICATE OF SERVICE

15

I hereby certify that on May 6, 2026, I electronically filed the foregoing **PLAINTIFF'S**

**RESPONSE IN OPPOSITION TO DEFENDANT MAGISTRATE ELIZABETH H.**

**KELLEY'S MOTION TO DISMISS [DOC. #21]**

and accompanying **EXHIBITS** with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the following:

Jeremy D. Johnston
Assistant Colorado Attorney General II/ jeremy.johnston@coag.gov
Attorney for Elizabeth H. Kelley
Holly R. Shilliday
McCarthy & Holthus, LLP/ hshilliday@mccarthyholthus.com
Attorney for Freedom Mortgage Corporation & Steven Bellanti


Kevin McCaffrey
Assistant County Attorney/ kmccaffrey@bouldercounty.gov
Colin J. Mayberry
Assistant County Attorney/ cmayberry@bouldercounty.gov
Counsel for Defendants Paul Weissmann and Amy Schiano


*s/* Stephen Hayes
Stephen Hayes, Plaintiff Pro Se

16